**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TINO SAFARIAN,<br>Petitioner,<br>v.<br>ERNESTO SANTACRUZ, *et al.*,<br>Respondents. | Case No. 2:26-cv-07563-ACCV<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. RULING

On July 12, 2026, Petitioner Tino Safarian (A#: 024641793) ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), against Ernesto Santacruz Jr., Director of the Los Angeles Immigration and Customs Enforcement ("ICE") Field Office; Dave Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States (collectively, "Respondents"). (Dkt. 1.)[1] For the reasons stated herein, the Court GRANTS the Petition.

---

[1] All citations to Petitioner's and Respondents' filings refer to the pagination numbers added to the header when docketed in the Case Management/Electronic Case File system.

## II. BACKGROUND

Petitioner is a native and citizen of Iran. (Dkt. 1 at 3.) In 1987, Petitioner entered the United States with his parents as refugees and was admitted into the United States. (*Id.* at 4.) About a year later, Petitioner and his family adjusted to lawful permanent resident status. (*Id.*)

When Petitioner was seventeen, he was convicted of second-degree murder and sentenced to sixteen years to life in prison. (*Id.*) In 2011, Petitioner was paroled after serving approximately eighteen years in prison and was released into ICE custody. (*Id.*) On November 29, 2011, Petitioner was ordered removed to Iran by an immigration judge. (*Id.*) Petitioner alleges he accepted the order and did not appeal. (*Id.*)

After being detained for approximately 120 days, Petitioner was released on an Order of Supervision ("OSUP") in 2012 because the Government could not effectuate his removal. (*Id.*) According to Petitioner, the Government's inability to effectuate his removal is "not an aberration" as the United States does not have diplomatic relations with Iran and has not had any since 1980. (*Id.*) Petitioner alleges that Iran has never issued a travel document for him and Respondents have not identified any development that would indicate removal is more likely now than it was in 2012. (*Id.*)

According to Petitioner, his compliance with his OSUP requirements has been "perfect." (*Id.*) Petitioner alleges he has complied with all supervision requirements in the past fourteen years and has had no arrests or contact with law enforcement during that time. (*Id.*) Petitioner alleges that he lived with and cared for his parents, has been employed in construction and the automobile auction business, and has lived with his wife and helped her raise two children. (*Id.*) Petitioner is currently employed as a logistics coordinator for AAA Logistics and alleges his family depends on his income. (*Id.*)

Petitioner alleges that he has complied with every condition of his OSUP served on August 8, 2024, that requires him to assist ICE in obtaining travel documents and providing ICE with copies and written responses regarding his efforts. (*Id.* at 5.) In the past fourteen years, Petitioner alleges that Iran has never provided a travel document nor has ICE notified Petitioner that they have obtained a travel document for him. (*Id.*)

At Petitioner's April 7, 2026 ICE check-in, Petitioner alleges he appeared with his attorney. (*Id.*) Petitioner alleges his attorney asked the ICE officer if Petitioner would be taken into custody, and the officer refused to answer or provide his name. (*Id.*) According to Petitioner, his counsel asked the officer multiple questions. (*Id.*) Petitioner's counsel asked the officer what needed to be done in the case, and the officer responded that "he 'needed travel documents.'" (*Id.*) The officer did not know which country's travel documents were needed. (*Id.*) When asked, the officer stated that no change in policy has occurred since June 2025 regarding detention of supervision cases. (*Id.*)

Petitioner alleges that he has affirmatively sought appointments with consulates for third countries, including France, Italy, Spain, and Germany. (*Id.*) According to Petitioner, those efforts failed because he is not a national of those countries and is not in their databases. (*Id.*) Petitioner states that there is nothing more than he can do and that "Respondents have never identified an act of cooperation he has failed to perform." (*Id.*)

Petitioner alleges his counsel emailed ICE on July 9, 2026, asking whether Petitioner will be detained at his July 14, 2026 check-in. (*Id.*) ICE did not respond before the Petition was filed. (*Id.*)

When his Petition was filed, Petitioner stated that he intended to appear for his July 14, 2026 ICE check-in appointment. (*Id.* at 6.)

In his July 12, 2026 Petition, Petitioner argues that he may not be re-

detained without a pre-deprivation hearing. (*Id.* at 6–9.) Petitioner requests, *inter alia*, that the Court declare that Respondents may not revoke his release and may not re-detain him "without prior written notice of the specific factual basis for revocation and a pre-deprivation hearing before a neutral adjudicator at which Respondents bear the burden of justifying detention;" enjoin Respondents from doing so; and order Respondents to maintain Petitioner's release under his existing OSUP. (*Id.* at 9.)

Respondents filed their Answer to the Petition on July 20, 2026. (Dkt. 7.) They assert that Petitioner's habeas claim is "not ripe" because Petitioner is not in custody. (*Id.* at 2.) Specifically, Respondents argue that "Petitioner's fear of re-detention is speculative and hypothetical and unsubstantiated[.]" (*Id.* at 3.) Respondents also stated that Petitioner was not detained at his July 14, 2026 check-in appointment and remains enrolled in the Alternatives to Detention with GPS location monitoring. (*Id.*)

On July 21, 2026, Petitioner and Respondents voluntarily consented to the assigned magistrate judge's jurisdiction pursuant to General Order 26-05. (Dkt. 8.)

Petitioner filed his traverse on July 23, 2026, arguing that he is "in-custody" for the purposes of 28 U.S.C. § 2241 and that his Petition is ripe. (Dkt. 9 at 3–7.) Petitioner also argues that Respondents did not rebut the merits of his Petition. (*Id.* at 8.) In the traverse, Petitioner requests that this Court grant his Petition and "enjoin Respondents from re-detaining [him] unless and until he is provided the due process necessary for revocation of an Order of Supervision: prior written notice of the specific factual basis for revocation and a pre-deprivation hearing before a neutral adjudicator at which Respondents bear the burden of justifying detention." (*Id.*)

On August 26, 2026, the Court held a status conference where the Court ordered Respondents to file a status report or declaration detailing the steps

required for Petitioner to obtain travel documents and a copy of the OSUP or similar document that contains Petitioner's current conditions of release no later than August 31, 2026. (Dkt. 11.) On August 31, 2026, Respondents filed a declaration of Matthew Palmer ("Declaration"), who is a Deportation Officer with ICE's Enforcement and Removal Operations. (Dkt. 12-1 at 1.) According to the Declaration, Petitioner is not "in custody at an immigration detention facility and is subject to conditions of release sunder ICE's Intensive Supervision Appearance Program" ("ISAP"). (*Id.*) The Declaration notes that "Petitioner's release is conditioned upon strict compliance with several requirements, including:"

a. General Program Rules: Petitioner must comply with all ICE and Court requirements, attend all scheduled appointments, refrain from criminal acts or illegal drug use, and notify their Case Specialist of any contact with law enforcement within 24 hours;
b. Electronic Monitoring: Petitioner is required to wear a nonremovable GPS tracking ankle bracelet, keep the device charged at all times, adhere to an approved schedule and potential curfew, and maintain the BI SmartLINK application on a dedicated mobile device; and
c. Facility Rules: During mandatory office visits, Petitioner must adhere to building policies, which prohibit the presence of weapons, recording devices, loitering, or additional unauthorized guests[.]

(*Id.* at 1–2.)

Petitioner is required to complete the following steps to obtain ore renew an Iranian passport:

a. Step 1: Register and apply online through the Iranian Ministry of Foreign Affairs' "Mikhak" system to generate a unique tracking code and receipt.
b. Step 2: Complete paper Form No. 001 and gather required physical documents, which generally include the expired/current passport, original Iranian Birth Certificate (Shenasnameh), National Identity Card Kārt-e Melli), proof of residency, and two passport-style photos adhering to specific Iranian governmental guidelines.
c. Step 3: Obtain a money order to pay the required consular fees.

d. Step 4: Mail the tracking receipt, Form 001, the physical identification documents, the money order, and a self-addressed prepaid envelope to the Interests Section of the Islamic Republic of Iran in Washington, D.C. (or appear in person).

(*Id.* at 2.)

## III. LEGAL STANDARD

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV. DISCUSSION

The Court begins with addressing Respondents' jurisdictional arguments and then addresses Petitioner's due process claim.

### A. This Court Has Jurisdiction.

This Court has habeas jurisdiction over this case.

Respondents argue that the case is "not ripe[,]" and thus the Court lacks jurisdiction, because Petitioner is not in immigration detention. (*See* Dkt. 7 at 2.)

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3); *see also Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL

2730235, at *3 (C.D. Cal. Aug. 26, 2025). The Supreme Court has "very liberally construed the 'in custody' requirement[.]" *Maleng v. Cook*, 490 U.S. 488, 492, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989). "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963)); *see also Preiser*, 411 U.S. at 487 ("[H]abeas corpus relief is not limited to immediate release from illegal custody, but . . . the writ is available as well to attack future confinement and obtain future releases.").

Here, Petitioner is "in custody" within the meaning of § 2241 because he is subject to several "restraints not shared by the public generally[.]" *Jones*, 371 U.S. at 240. When Petitioner was released from ICE's custody, he was placed on an Order of Supervision, with requirements for compliance including that he report to in-person check-ins with ICE and assist ICE in obtaining travel documents. (Dkt. 1 at 4–5.) Petitioner is now subject to ISAP, which includes many requirements (*see generally* Dkt. 12-1,) and requires that Petitioner wear a "non-removable GPS tracking ankle bracelet" at all times and maintain the "BI SmartLINK application on a dedicated mobile device[.]" (*Id.* at 1.) A violation of these, or any other condition of release, can result in Petitioner being taken into physical custody by ICE. (Dkt. 12-2 at 3.) Petitioner's freedom is "significantly confine[d] and restrain[ed,]" and he is thus in custody for the purpose of federal habeas corpus jurisdiction. *See Jones*, 371 U.S. at 243.

Petitioner "need not seek immediate release of that custody for habeas corpus relief to be available." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (citing *Preiser*, 411 U.S. at 487 *and Rose v. Morris*, 619 F.2d 42, 43 (9th Cir. 1980)). "Rather, given h[is] present

custodial arrangement, []he may also bring a habeas challenge to 'attack [his] future confinement' by ICE." *Id.* (quoting *Preiser*, 411 U.S. at 487). A Petitioner can make such a challenge when he challenges his "future unlawful re-detention for the purposes of removal, in part on the grounds that ICE has refused to provide any assurances that it will not re-detain [Petitioner] at [his upcoming] check-in appointment." *Id.*

Here, as stated at the August 26, 2026 status conference, Petitioner's next ICE check-in is scheduled for September 15, 2026. While Petitioner was ordered removed on November 29, 2011, as Respondents' own declaration states, "[t]he United States does not maintain diplomatic relations with Iran[.]" (Dkt. 12-1 at 2.) Respondents do not contest that Petitioner has complied with the requirements of his release, including making efforts to obtain travel documents, and Respondents do not contest that in the past fourteen years, neither the Government nor Petitioner has been able to obtain travel documents. (*See generally* Dkt. 7.) Even so, Respondents "refused to provide any assurances that [they] will not re-detain" Petitioner at his upcoming scheduled ICE check-in. (Dkt. 1 at 5.) Furthermore, at the August 26, 2026 status conference, Petitioner's counsel noted that Petitioner is now subject to more stringent supervision under the ISAP program, including GPS monitoring, than under his prior OSUP. (Dkts. 9 at 3; 11.) Respondents do not dispute that Petitioner is now subject to GPS monitoring and other requirements under ISAP. (*See generally* Dkts. 12-1; 12-2.) In fact, Respondents note that "Petitioner's release is conditioned upon strict compliance with several requirements[.]" (Dkt. 12-1 at 1.)

Petitioner's release on OSUP, and now under ISAP, makes him subject to several restraints to which the general public is not. Additionally, with a scheduled upcoming check-in, he challenges his "future unlawful re-detention for the purposes of removal, in part on the grounds that ICE has refused to provide any

assurances that it will not re-detain h[im] at h[is upcoming] check-in appointment." *Sun*, 2025 WL 2730235, at *3. Accordingly, the Court finds that Petitioner is "in custody" within the meaning of 28 U.S.C. § 2241 and the habeas Petition is ripe. *See, e.g.*, *id.* (finding petitioner in custody for the purposes of federal habeas corpus jurisdiction where conditions of release "significantly confine[d] and restrain[ed] [petitioner's] freedom"); *Harrington v. Albarran*, No. 26-CV-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026) (same); *ZAYRA TORRES SANCHEZ, Petitioner, v. ERNESTO SANTACRUZ, et al., Respondents. Additional Party Names: Ernesto Santacruz Jr., Markwayne Mullin, Todd Blanche, Todd Lyons*, No. CV 26-5063 FMO (KES), 2026 WL 1915710, at *3 (C.D. Cal. June 29, 2026) (same); *Ayala v. Albarran*, No. 5:26-CV-03092-BLF, 2026 WL 1179862, at *3 (N.D. Cal. Apr. 30, 2026) (rejecting respondents' jurisdiction argument in light of "their own pattern of escalating measures taken with respect to [petitioner], including their repeated refusal to provide assurances that he will not be detained").

**B. Petitioner's Due Process Claim**

Petitioner argues that given his liberty interest of living in the community on OSUP, Respondents may not re-detain him without a pre-deprivation hearing. (Dkt. 1 at 6–9.) Respondents only argue that Petitioner's claim is unripe because he is not "in custody." (Dkt. 7 at 2.) Respondents provide no response to the merits of Petitioner's procedural due process claim. (*See generally id.*)

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to noncitizens in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is

lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S. Ct. 977, 41 L. Ed. 140 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law[.]"); *Trump v. J. G. G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation modified).

Given Respondents' concession, nothing more need be said. *See Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). Given that Petitioner is in-custody for the purposes of seeking habeas relief and Respondents fail to respond to Petitioner's procedural due process claim, the Court finds that it is appropriate to grant the Petition on procedural due process grounds.

## V. CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS that Respondents are prohibited from re-detaining Petitioner Tino Safarian (A#: 024641793) unless Respondents comply with due process protections and applicable laws and regulations required to revoke his release under his OSUP or ISAP, including providing him with adequate notice, an interview, and an opportunity to be heard.

DATED: September 1, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge